**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| John and Lori Chlubicki,<br><br>                 Plaintiff<br><br>   v.<br><br>Pennymac Loan Services, LLC,<br>             Defendants | Civil No. 3:17-cv-01485<br><br>(Judge Richard P. Conaboy) |

**Memorandum**

We consider here Defendant's Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (Doc. 13). Defendant's motion has been fully briefed (Docs. 14,15,16 and 19) by the parties and is ripe for disposition.

**I. Operative Legal Standard.**

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Bell Atlantic Corp v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

> "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 570). The

1

> Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. Moreover, it continued, "[d]etermining whether a complaint states a possible claim for relief will … be a context-specific task that requires the reviewing Court to draw on its traditional experience and common sense." *Id.* (citation omitted).

McTernan, 577 F.3d at 530. The Third Circuit discussed the effect of Twombly and Iqbal in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict Courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949.] Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the Plaintiff has a "plausible claim for relief." *Id*. at 1950. In

2

> other words, a complaint must do more than allege a Plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See *Philips v. Co. of Alleghany*, 515 F. 3d 224, 234-35 (3d Cir. 2008). As the Supreme Court instructed in Iqbal, "[w}here the well-pleaded facts do not permit the Court to infer more that the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be a "context-specific task that requires the reviewing Court to draw on its judicial experience and common sense." *Id.* at 1950.

Fowler, supra, at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pleaded facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. September 24. 2009) (quoting Twombly, 550 U.S. at 555) (not precedential).

**II. Factual Background.**[1]

Plaintiffs' Complaint (Doc. 1) alleges that Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by engaging in deception to collect the debt. The debt in question was Plaintiffs' mortgage with PennyMac Mortgage Investment Trust. Defendant's business involved the collection of debts owed to PennyMac Mortgage Investment Trust. Plaintiffs allege further that the deceptive practices Defendant engaged in were committed during three phone calls Plaintiff Lori Chlubicki had with three separate representatives of Defendant in January of 2016. Each of these phone calls were initiated by Lori Chlubicki and each concerned Plaintiffs' attempt to determine their responsibilities under their mortgage. The mortgage had fallen more than 30 days overdue because of a combination of medical issues and a reduction in Plaintiffs' income.

These phone calls were placed on January 7, 11, and 13, 2016 and, according to Plaintiffs, had one common denominator -- each involved a misrepresentation from one of Defendant's agents that the loan was in "active foreclosure". Also, each of these conversations included an assertion that Plaintiff should immediately bring the loan current to avoid the consequences of a foreclosure. Defendant, however, had not initiated a foreclosure at

---

[1] The factual recitation is faithful to the allegations of Plaintiffs' Complaint. This must be the case because the law requires that we accept as true Plaintiffs' well-pleaded factual allegations. See Iqbal, supra, at 1949.

4

the time of these telephone conversations. As a consequence, Plaintiffs' depleted their 401K account to bring the loan current. Plaintiffs contend that, because of Defendant's misrepresentations regarding the existence of an "active foreclosure", they suffered financial detriment by prematurely accessing their retirement account. Plaintiffs assert that Defendant's misrepresentations violated various provisions of the FDCPA including 15 U.S.C. §§ 1692e, 1692e(5) 1692(10) and 1692f.

**III. Legal Discussion.**

The Plaintiff in an FDCPA case must prove four things: (1) that she is a consumer; (2) that the Defendant is a debt collector; (3) that the Defendant's action involved an "attempt to collect a debt" as defined by the FDCPA; and (4) that the Defendant violated a provision of the FDCPA in attempting to collect the debt. *Douglass v. Convergent Outsourcing*, 765 F.3d 299,303 (3d Cir. 2014). Activity undertaken for the general purpose of inducing payment constitutes debt collection. *Simon V. FIA Card Services*, 732 F.3d 259,265 (3d Cir. 2013). The FDCPA, specifically 15 U.S.C. § 1692e, explicitly prohibits debt collectors from using "any false, deceptive or misleading representation or means in connection with the collection of any debt." One of the non-exclusive listed practices prohibited by section 1692e is false representation regarding "the character, amount, or <u>legal</u> <u>status</u> of any debt." (Emphasis added).

**A. Whether the case must be dismissed because Plaintiffs originated the communications with the Defendant?**

Defendant's motion is based upon the idea that, because Plaintiff Lori Chlubicki initiated all three calls in question, no communication from any of Defendant's employees during those conversations could be entitled to the protection afforded by the FDCPA. Defendant would have the Court conclude that multiple district court cases in the Second Circuit have correctly held that " the purpose of § 1692 is to ensure that communications initiated by the debt collector (not the consumer) are not abusive, deceptive, or unfair." *See DiMaggio v. Countrywide Home Loans, Inc.,* 2005 WL2098068 at *2-3 (N.B.N.Y. August 30' 2005). While the DiMaggio court seemed to find some talismanic prophylactic effect in the fact that the consumer in that case had initialed contacted with the Defendant, our reading of that case finds that reasoning dubious.[2] The DiMaggio Court relied heavily on the idea that it had not been able to identify a case where the FDCPA afforded protection to a consumer who had initiated a communication with a creditor. This Court is not sanguine that the inability to find such a case constitutes proof that the FDCPA

---

[2] We note that DiMaggio cites to *Kropelnicki v. Singer*, 290 F.3d 18,127 (2d Cir. 2002), for the proposition that, when a consumer initiates communication with a debt collector, many of the policy reasons behind the FDCPA disappear. Kropelnicki does not explicitly state this and, having read Kropelnicki, that is an interpretation of Kropelnicki that this Court finds unjustified. Based upon our reading of Kropelnicki we find that it does not lend support to Defendant's argument here.

shields every communication by a debt collector in a call initiated by a debtor. Debtors often have valid reasons to contact debt collectors. Defendant here would have the Court find that in the course of such a call no misrepresentation, however egregious, by the debt collector is to be actionable under the FDCPA. The various authorities cited by Defendant in support of this assertion are insufficient to convince this Court to adopt this view.

Plaintiffs cite a case from our circuit that discussed the cases relied upon by Defendant here. That case, *Trunzo v. Citi Mortgage,* 876 F. Sup 2d 521, 536 (W.D.Pa. 2012), held: "(t)his Court does not find that the aforementioned cases (those relied upon by the Defendant in this case) stand for the proposition that any and all responses to a consumer-initiated communication automatically fall outside the reach of the FDCPA. Responsive communications from debt collectors can easily be both informational and attempts to collect a debt." With due respect for the district court opinions cited by defendant, we find the *Trunzo* opinion to be better-reasoned and more reflective of the primary purposes of the FDCPA – -"[t]o eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt

collection abuses." 15 U.S.C. § 1692e. Nothing in § 1692 compels, or even suggests, that a debt collector may enjoy "open season" on a consumer who initiates contact with a legitimate concern.

In this case at this stage we must accept Plaintiffs' assertions that: (1) they are consumers; (2) the Defendant is a debt collector; (3) Defendant's agents/employees engaged in an abusive practice (the misrepresentation that Plaintiffs' mortgage was in an "active foreclosure)" in their attempt to collect a debt; and (4) that Defendant's agents/employees violated § 1692e (2)(A) by misrepresenting the legal status of the debt. Thus, Plaintiffs have pleaded all necessary elements of a claim under the FDCPA. *See Douglass*, supra. We reiterate that we find no legal significance in the fact that the Plaintiffs initiated the conversations that are at the root of this case. The proper focus here is the content of these conversations and the outcome of this case is wholly dependent upon the fact finders' interpretation of who said what to whom.

**B. Whether the Plaintiffs have standing to pursue this action?**

Defendant raises the issue of standing, as a seeming after thought, in its Reply Brief (Doc. 16). There is irony in Defendant raising the issue of standing in a case that it removed from the Lackawanna County Court of Common Pleas. Nevertheless, it is axiomatic that federal courts must continually ensure that the parties to a law suit have standing because standing is an

essential element of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

Standing entails three elements: (1) the Plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent; (2) existence of a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560 (1992). Defendant's sole basis for challenging standing in this case is its contention that Plaintiffs have suffered no "injury or fact". (Doc. 16 at 8-9). Defendant asserts that Plaintiffs' depletion of their retirement account cannot constitute an "injury in fact" since Plaintiffs were obligated to repay the mortgage loan in any event. *(Id.)* The Court sees no significance in the fact that Plaintiffs had a valid obligation to Defendant. Indeed, if the obligation to repay a valid debt was a defense to all conduct engaged in by a debt collector, the FDCPA would be emasculated.

The Court finds that, despite Plaintiffs' undeniable obligation to repay the loan, they have still suffered a "concrete and particularized injury in fact". If Plaintiff's had not been led to believe that their loan was in "active foreclosure" and, thus, subject to imminent sale (Amended Complaint at ¶¶ 44-48), they would not have felt the need to deplete their retirement

9

account and could have sought other means to bring the loan current.[3] As Plaintiffs point out (Doc. 19 at 5-6) "a plaintiff's allegations of financial harm will easily satisfy each of these components (of a concrete and particularize injury in fact), as financial harm is a 'classic' and 'paradigmatic form' of injury in fact." *Cottrell v. Alcon Laboratories*, 874 F.3d 154,163 (3d Cir. 2017). The injury in fact requirement is "very generous" to claimants, demanding only that the claimant "allege some specific, 'identifiable trifle' of an injury. *Id.* at 162 (citing *Goldman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982). Crediting, as we must, the factual allegations of Plaintiffs' Amended Complaint the Court concludes that Plaintiffs have satisfied the liberal standards for determining standing referenced above.

**IV. Conclusion.**

Consistent with the discussion above and the authorities identified in that discussion, the Court finds that Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 13) must be denied. An Order consistent with this determination will be filed contemporaneously.

---

[3] In assessing whether standing exists, we assume that a Plaintiff has stated valid legal claims. *Warth v. Seldin*, 422 U.S. 490,500 (1975).

BY THE COURT

                                        S/Richard P. Conaboy
                                        Richard P. Conaboy
                                        UNITED STATES DISTRICT JUDGE


**DATED: March 12, 2018**